LAW OFFICES OF
# MARY H. BEATIFICATO
2 VENTURE
# 380
IRVINE, CALIFORNIA 92618
FAX (949) 585-0480

_____

TELEPHONE
(949) 585-0483

MARY HELEN BEATIFICATO, .ESQ.                                    E-MAIL:  :mh@oclitigators.com


February 13, 2007


The Hon. Susan Illston
United States District Judge
Northern District of California
450 Golden Gate Avenue, Ctrm. 10, 19th Floor
San Francisco, California 94102

      Re:    Watkins v. State of California
               U.S. Dist. Ct. (N.D. Cal.) No. C-05-1143-SI

Dear Judge Illston:

Plaintiff is in receipt of a copy of Defendants letter to this Court dated February 6, 2007 concerning a discovery dispute in the above-entitled action.  Pursuant to the Court's Standing Order, Plaintiff hereby responds as follows:

The instant matter is a wrongful death and civil rights action brought by Sylvia Mahach-Watkins against Larry Depee and the State of California.  Trial was initially set for December 11, 2006.  However, as the court will recall, the trial was continued on the account of the sudden and unexpected death of Plaintiff's police procedures expert, Frank Saunders in September 2006.  Trial is currently set for May 29, 2007, with all non-expert discovery in this matter complete as of August 19, 2006.  Expert discovery has commenced with the exchange of all expert reports pursuant to FRCP 26 and Plaintiff has taken three of Defendants' five expert witnesses.  The current cut-off for the completion of all expert discovery is March 2, 2007.

The instant discovery dispute concerns the deposition of Plaintiff's forensic pathologist, Kris Sperry.  Specifically, Defendants wish to depose Dr. Sperry in California and have requested that Plaintiff bear the cost of Dr. Sperry's travel expenses, preparation time, and professional time relating to the taking of said deposition in California.  At Defendants' election, Dr. Sperry's deposition is currently set to take place in California on March 2, 2007.  The parties are currently unable to agree as to (1) who should bear the cost of taking Dr. Sperry's deposition in California and (2) whether Dr. Sperry's fee for deposition is reasonable.  As such, court intervention is necessary.


Watkins v. State of California, et al.

February 13, 2007
Page Two of Five


**Dr. Sperry's Travel Expenses and Professional Fees.**

Federal Rules of Civil Procedure 26(b)(4)(C) provides in pertinent part:

> Unless manifest injustice would result, (i) the court shall require that *the party seeking discovery* pay the expert a reasonable fee for time spent in responding to discovery under this subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert. [Emphasis added].

F.R.C.P. 26(b)(4) has been interpreted to include the payment of not only actual time spent in deposition but the time spent by the expert in preparing for and traveling to and from the deposition. Thus, *unless manifest injustice would result*, the party seeking expert discovery is responsible for paying the fees charged by the expert relating to that discovery request.

"[D]etermining whether manifest injustice would occur requires "'weigh[ing] the possible hardships imposed on the respective parties…[and] balanc[ing] the need for doing justice on the merits between the parties…against the need for maintaining orderly and efficient procedural arrangements.'" Fisher-Price, Inc. v. Safety 1st, Inc. (DDE 2003) 217 FRD 329, 332. Fisher-Price involved a post trial motion by Fisher-Price for reimbursement of expert fees incurred in locating the expert witness's prior deposition transcripts. The court found that manifest injustice would <u>not</u> result in requiring Fisher-Price (the party requesting the expert discovery) to pay the fees incurred by the expert in locating prior deposition transcripts. The court based its decision on the fact that (1) Fisher-Price was a large financially successful multinational corporation and (2) that it is routine that the party requesting expert discovery bear the costs associated with complying with discovery requests. Id. Further, the court pointed out the inherent unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement. Id. Lastly, the court reasoned that the "general and unambiguous rule which requires the party seeking discovery to pay the associated costs", comports with the goal of "maintaining orderly and efficient procedural arrangements."

It is clear that absent a showing of "manifest injustice", the party requesting discovery (in this case the Defendant) must bear the costs of the expert's compliance with that request. Here, Defendants have made absolutely no showing of any "manifest injustice" aside from alleging that "it is unreasonable and unjust to expect defendants to bear the cost of deposing Dr. Sperry clear across the country…" (Defendants' Letter Brief at pg. 1, ¶3) Thus, the basis of Defendants' argument is a financial one. While in some cases, economic hardship may constitute manifest injustice, this case is not one of them. See Reed v. Binder (D NJ 1996) 165 FRD 424, 428 (impoverished plaintiff needed to depose six experts designated by very affluent defendant). Here, like the Plaintiff in Fisher- Price, Defendant State of California cannot contend that it is impoverished and/or financially unable to bear such a cost. For this reason alone, there is no manifest injustice in requiring Defendant to pay for Dr. Sperry's travel expenses to submit to deposition in California (after all, it is Defendants who insist that the deposition occur in California).

Watkins v. State of California, et al.

<mark>Case3:05-cv-01143-SI   Document82   Filed02/13/07   Page3 of 5</mark>
<mark>x</mark>

February 13, 2007
Page Three of Five

Further, unlike the plaintiff in Fisher-Price who argued that manifest injustice resulted from being required to pay for the expert's belated compliance with a discovery request, Defendants assert no facts which would even remotely rise to the level of manifest injustice. As such, Defendants' request should be denied.

Further, it has been held that where brought to the deposing attorney for deposition instead of the attorney going to the witness, should have his or her travel expenses paid for by the deposing party. McBrian, Inc. v. Liebert Corp. (ND IL 1997) 173 FRD 491, 493. In McBrian, the plaintiff was ordered to bear all costs associated with its expert's travel and lodging since it was plaintiff that selected the location of the deposition. The court noted that the deposing attorney "could have just as easily taken [the expert's] deposition in Minnesota, avoiding altogether the need for [the expert's] claimed travel and lodging costs. Id.

Further, in Frederick v. Columbia University (2003) 212 F.R.D. 176, the Court held that travel time for experts is compensable. Id. at 177. In that case, a New York Court ordered the deposing party to pay an expert's travel fees from California to New York. In so holding, the Court stated, "[t]his order obviously does not prevent the parties from agreeing to conduct Dr. Ordog's deposition at his place of business in California, in which case reimbursement for travel expenses would be unnecessary." Id.

While Defendants cite to Lent v. Fashion Mall Partners (2004) 223 F.R.D. 317, in support of their position that Plaintiff is responsible for Dr. Sperry's travel costs to and from Georgia, Lent does not stand for such a proposition. In Lent, defendants sought to take the deposition of Plaintiff's security expert, John Roberts, who was located in Georgia. Defendants refused to pay for Mr. Robert's travel expenses, travel time to and from the deposition and preparation time. The court held that while Plaintiff was free to select the expert of his choice, the defendants should not be forced to pay the increased costs associated with that decision. Id. at 318. *The Court based that decision on the Plaintiff's failure to claim or show that no acceptable experts were available in the New York area.*

Clearly, the facts of Lent are distinguishable from the present facts. First, the plaintiff's expert retained in Lent was a security expert. Surely, the court would agree that security experts are in far more abundant supply than forensic pathologists who are often so busy in their responsibilities as active coroners that they are unwilling or unable for retention in private matters. Further, as the court will recall, at the time of Mr. Saunders passing, Plaintiff had already retained Dr. Cooper, a forensic pathologist (in fact Plaintiff relied upon Dr. Cooper in opposing Defendants' summary judgment motion). However, as a result of the unfortunate death of Mr. Saunders and the subsequent continuance of the trial date, Dr. Cooper notified Plaintiff's counsel shortly thereafter that he was unable to continue his work in this matter. As a result, Plaintiff was left with no choice but to retain a replacement pathologist in addition to a police procedure expert. While Defendants make much out of the fact that Plaintiff had until January 15, 2007 to retain these experts, Defendants completely ignore the fact that this matter is a very fact intensive matter and that the discovery materials in this case are quite voluminous. Thus, even with the court's extension of the expert discovery cut-off, Plaintiff had only a limited amount of time to submit materials to possible experts for review. In fact, Plaintiff's counsel
Watkins v. State of California, et al.
February 13, 2007
Page Four of Five

consulted with at least 6 different forensic pathologists in California and 1 in Nevada. All of these experts were unavailable to review and/or prepare a report within such a short period of time. Further, as was the case with a few of the experts Plaintiff consulted with, they were not available for deposition and/or trial given the current order. As such, upon being referred to Dr. Sperry in Georgia and given his exceptional credentials and experience, Plaintiff retained his services. See Dr. Sperry's C.V. attached to his declaration filed concurrently with this letter brief. It is important to note that the factual showing which Plaintiff has presented here (ie. the death and withdrawal of previously retained experts and the unavailability of other comparable experts in California coupled with the specialized nature of the expert witness) are not present in Lent.

It should also be noted that, as the court pointed out in Frederick, Defendants have the option of conducting Dr. Sperry's deposition in Georgia in which case the issue of travel costs will be moot. In addition, as plaintiff's counsel has done on past occasions, Defendant has the option of conducting Dr. Sperry's deposition via video conference. In this regard, Defendants may eliminate the costs associated with their own travel to Georgia. In fact, in a letter dated January 25, 2007, Plaintiff's counsel suggested this alternative.

In summary, there is absolutely no authority for compelling Plaintiff to pay for either (1) Dr. Sperry's travel costs to California or (2) Defendants' counsel's travel costs to Georgia *absent a finding of manifest injustice*. Further, while a finding of manifest injustice can be based upon economic hardship, there is simply no evidence to support such a finding. Specifically, there is no evidence that Defendant State of California is impoverished such that it would be unfair to require it to have to pay for the costs associated with deposing Plaintiff's expert.[1]

**The Reasonableness of Dr. Sperry's Fee.**

Defendants contend that Dr. Sperry's fee for deposition is unreasonable and requests that this court reduce Dr. Sperry's hourly rate for deposition to $450.00 per hour. Pursuant to FRCP 26(b)(4)(C), the party seeking discovery is required to pay an expert a reasonable fee. "In determining whether an expert fee is "reasonable," courts are guided by the following factors: "(1) the witness's area of expertise, (2) the education and training that is required to provide the expert insight that is sought, (3) the prevailing rates for other comparably respected available experts, (4) the nature, quality and complexity of the discovery responses provided, (5) the cost of living in the particular geographic area, (6) the fee being charged by the expert to the party who retained him, (7) fees traditionally charged by the expert on related matters, and (8) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26." Frederick v. Columbia University (SD NY 2003) 212 FRD 176, 177.

Defendants make much to do about the fact that Dr. Sperry charges more per hour for deposition than does their pathologist, Dr. Mason. However, as is evidenced by Dr. Sperry's curriculum vitae (22 pages), Dr. Sperry's career as a board certified medical examiner over the past 29 years is far more impressive and extensive than Dr. Mason's career outlined in his curriculum vitae (2 pages). See Dr. Mason's C.V. attached which is attached to my declaration.

Watkins v. State of California, et al.
February 13, 2007
Page Five of Five

---

[1] It should be noted that Plaintiff has already borne the cost of deposing 3 of Defendants' five experts.

Dr. Sperry's area of expertise is that of a board certified medical examiner. Dr. Sperry has spent over 3 decades acquiring the education, training, and experience to provide the expert insight that is sought in this action. Dr. Sperry is licensed to practice medicine in three States and has multiple board certifications in forensic pathology. Dr. Sperry has continuously taught at various medical schools over the past 21 years and is currently teaching at the Medical College of Georgia in Augusta, Georgia. Dr. Sperry has approximately 15 professional appointments. He has lectured or directed over 15 workshops and seminars. He has sat on different committees and panels. Dr. Sperry has been published over 50 times. He has made over 20 abstracts and national scientific organization presentations. For the past 10 years Dr. Sperry has held the position as Chief Medical Examiner for the State of Georgia, Georgia Bureau of Investigation Division of Forensic Sciences. His C.V. is too voluminous to mention everything in this letter brief. Given the obvious disparity between the C.V.s of the 2 doctors, the fact that Dr. Sperry's rates are more than Dr. Mason's is not determinative.

Further, Dr. Sperry's states in his declaration that the average hourly rate for board certified medical examiners is about $550 per hour. Dr. Sperry estimates that his current rate is probably in the 75 percentile of fees charged. He adds further that since charging his current rate he has been deposed 8 times and has been paid his rate without complaint or comment. These depositions were related to cases originating in Michigan, Ohio, Louisiana, Mississippi, Alabama, and Washington, D.C. Dr. Sperry knows of other board certified medical examiners who charge as much as or more than he does. Two of which are: 1) Warner Spitz, M.D., from Detroit, Michigan, who charges $1,500 per hour for his deposition testimony. Fifteen years prior to Dr. Spitz charging $1,500 per hour, he was charging $1,000 per hour; and 2) Michael Baden, M.D., from New York City, New York, who charges $1,000 per hour for his deposition testimony.

**Conclusion**

Based upon the foregoing legal authority and the factual showing presented by Plaintiff, Plaintiff respectfully requests that this Court order Defendants to bear any and all costs associated with Dr. Sperry's travel to California for deposition and/or costs associated with Defendants' travel to Georgia. Further, Plaintiff requests that this court deny Defendants' request to reduce Dr. Sperry's hourly deposition rate. Further, to the extent that this Court is inclined to grant either of Defendants' requests, Plaintiff requests permission to make oral argument.

Sincerely,

/S/
MARY H. BEATIFICATO
Attorney for Plaintiff


/S/
TORY PANKOPF
Attorney for Plaintiff